UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVOUD POURABDOLLAH, *et al.*,

    *Plaintiffs*,

v.

ANTONY J. BLINKEN, in his official capacity as Secretary of the U.S. Department of State,

    *Defendant.*

No. 23-cv-1603 (DLF)

## MEMORANDUM OPINION

Plaintiffs are four Iranian nationals who have applied for nonimmigrant visas for students or family members of students enrolled in U.S. academic programs. The plaintiffs brought this action under the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1), (2)(A), to compel the U.S. Secretary of State to make a final decision on their visa applications. Compl. at 16, Dkt. 1. They contend that the delay in adjudicating their visa applications has been unreasonably long and demonstrates a "pattern or practice" of discrimination against Iranian nationals. Before the Court is the Secretary's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss at 1, Dkt. 7. For the reasons that follow, the Court will grant the motion and dismiss the Complaint under Rule 12(b)(6).

I.    **BACKGROUND**

    A.    **Statutory and Regulatory Background**

A noncitizen "who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study" may apply for an "F-1" nonimmigrant visa. 8 U.S.C. § 1101(a)(15)(F)(i). Similarly, a

noncitizen "who is a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist or leader in a field of specialized knowledge or skill" who seeks to enter the United States as an exchange visitor may apply for a "J-1" nonimmigrant visa. *Id.* § 1101(a)(15)(J). The noncitizen "spouse [or] minor child" of a J-1 or F-1 visa holder may additionally apply for a "J-2" or "F-2" nonimmigrant visa, respectively. *Id.* § 1101(a)(15)(F)(i), (J). The "Secretary of State shall require every alien applying for" an F- or J-category visa "to submit to an in person interview with a consular officer" unless a waiver is obtained. *Id.* § 1202(h)(1).

After a noncitizen has "properly completed and executed" a "visa application," a "consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order . . . discontinue granting the visa." 22 C.F.R. § 41.121. "No visa or other documentation shall be issued" if (1) "it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law"; (2) "the application fails to comply with the provisions of this chapter, or the regulations issued thereunder"; or (3) "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." 8 U.S.C. § 1201(g). In 2002, Congress enacted the Enhanced Border Security and Visa Entry Reform Act of 2002, which, among other things, provided that "[n]o nonimmigrant visa under . . . 8 U.S.C. § 1101(a)(15)," including F- and J-category visas, "shall be issued to any alien from a country that is a state sponsor of international terrorism unless the Secretary of State determines, in consultation with the Attorney General and the heads of other appropriate . . . agencies, that such alien does not pose a threat to the safety or national security." Pub. L. No. 107-173, § 306, 116 Stat. 543, 555 (2002) (codified at 8 U.S.C. § 1735). As of January 19, 1984, the Secretary of State has designated Iran

a "state sponsor of international terrorism." *State Sponsors of Terrorism*, U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism [https://perma.cc/Z5MQ-LWR3].

### B.     Factual Background[1]

Plaintiffs Jamshid Hassanpour, Mehrad Moradi, Sajjad Moradi, and Sepideh Shoaei are Iranian citizens who applied for F-1 or F-2 visas to attend (or to accompany family members attending) American graduate-degree programs.[2]  Compl. ¶¶ 8–9, 11–12, Dkt. 1.  Hassanpour was "accepted to the Georgia Institute for Technology for his Doctorate in Electrical and Electronics Engineering" and applied for an F-1 visa.  *Id.* ¶ 8.  On September 1, 2022, he appeared for a visa interview at the U.S. Embassy in Paris, France and has not received a final decision.  *Id.*  Mehrad Moradi's wife is a F-1 visa holder studying in Kansas, and Moradi applied for an F-2 visa to join her and their newborn.  *Id.* ¶ 9.  On May 31, 2022, Moradi appeared for a visa interview at the U.S. Embassy in Bangkok, Thailand and has not received a final decision.  *Id.*  Sajjad Moradi was "accepted to The University of Texas at Arlington for his Doctorate in Exercise Science and Kinesiology" and applied for an F-1 visa.  *Id.* ¶ 11.  On July 27, 2022, Moradi appeared for a visa interview at the U.S. Consulate General in Karachi, Pakistan and has not received a final decision.  *Id.*  Shoaei was "accepted to the Master's Program at California State University to study Computer

---

[1] When deciding a Rule 12(b)(6) motion, the Court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). At this motion-to-dismiss stage, the court may take judicial notice of publicly available information on official government websites.  *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of an official government website).

[2] Initially, this suit was brought by eight Iranian citizens: the aforementioned four citizens and Davoud Pourabdollah, Elham Behnam, Mohammadhadi Masoudi, and Siamak Roshanzadeh.  On October 5, 2023, Pourabdollah, Behnam, Masoudi, and Roshanzadeh voluntarily dismissed their claims because the Secretary of State "issued final decisions."  Notice of Dismissal at 1, Dkt. 9.  According to the Secretary, consular officers issued visas to these four plaintiffs.  *See* Mot. to Dismiss at 5–7.

3

Science" and applied for an F-1 visa. *Id.* ¶ 12. On November 29, 2022, Shoaei appeared for a visa interview at the U.S. Embassy in Nicosia, Cyprus and has not received a final decision. *Id.* According to the Secretary, all four plaintiffs' visa applications are currently marked as "Refused" on the State Department's online "Visa Status Check." *See* Mot. to Dismiss at 6–7, Dkt. 7.[3]

Still waiting on a final decision, the plaintiffs sued the Secretary of State on June 5, 2023. The plaintiffs assert two claims under the Administrative Procedure Act (APA). First, they claim that the adjudication of their pending visa applications has been unreasonably delayed in violation of 5 U.S.C. §§ 555(b), 706(1). *See* Compl. ¶¶ 62–83. Second, they contend that the delay reflects an "arbitrary" and "capricious" "pattern or practice" of "disparate treatment [against] the applications of Iranian students" in violation of 5 U.S.C. § 706(2)(A). *Id.* ¶¶ 84–94. They seek, among other things, declaratory and injunctive relief "compelling [the Secretary] to make a final decision" on their visa applications. *Id.* at 16–17. On August 7, 2023, the Secretary moved to dismiss, and on October 5, 2023, four of the eight original plaintiffs voluntarily dismissed their claims because they received visas. *See supra* note 2.

## II.   LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

---

[3] The Court will not take judicial notice of each plaintiff's current visa status based on the government's representations alone. As discussed in note 1, *supra*, the Court may take judicial notice of "information posted on official public websites of government agencies." *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016). But neither party has provided the Court with the plaintiffs' passport numbers, which are required to view each plaintiff's visa status on the State Department's "Visa Status Check" webpage. *See Visa Status Check*, U.S. Dep't of St., https://ceac.state.gov/CEACStatTracker/Status.aspx [https://perma.cc/MVL7-35NT]. As such, the Court cannot "accurately and readily determine[]" each plaintiff's visa status "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

(1994). Federal law empowers federal district court judges to hear only certain kinds of cases, and the plaintiff bears the burden of establishing that her case falls within that limited jurisdiction. *Id.* When deciding a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citations omitted). A court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The complaint need not make "detailed factual allegations," but allegations that are merely a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

## III. ANALYSIS

### A. Article III Standing

The plaintiffs have Article III standing. "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

First, the plaintiffs have satisfactorily alleged that they suffered a concrete injury. "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms," including "harms specified by the Constitution itself." *Id.* at 2204. The Secretary is correct to note that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009); *see* Mot. to Dismiss at 10, Dkt. 7. "Congress specifically recognized the right to reasonably expeditious agency action," and a delay in visa processing amounts to a "procedural right" that, standing alone, is not a "concrete" harm under *TransUnion*. *Khan v. Blome*, No. 22-cv-2422, 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022).

Contrary to the Secretary's assertions, *see* Mot. to Dismiss at 10–14, however, the plaintiffs have adequately alleged that the delay of their visa applications has caused concrete substantive harms besides mere procedural injury. For Hassanpour, Sajjad Moradi, and Shoaei, the delay of their F-1 visa applications has injured their "concrete professional and financial interest in earning an advanced degree." *Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *2 (D.D.C. Jan. 17, 2023). Each has been unable to access their "funded education" programs in the United States.

6

Compl. ¶ 80.  Such a "monetary harm[]" "readily qualif[ies]" as a concrete harm.  *TransUnion*, 141 S. Ct. at 2204.  For Mehrad Moradi, the concrete-harm analysis is even more straightforward.  Due to the delay in the processing of his F-2 visa, Moradi remains "separated from his spouse and newborn child" and is unable to provide direct "family support."  Compl. ¶ 9.  Besides his financial interest in providing "family support" to his wife and newborn, Moradi has suffered a concrete harm due to the separation from his family in the United States.[4]  *See Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018) (recognizing "that a person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact").

The Secretary relies on a "long line of cases" recognizing that plaintiffs "do not have standing to bring a claim concerning their visa applications."  Mot. to Dismiss at 11 (quoting *Polyzopoulos v. Garland*, No. 20-cv-804, 2021 WL 1405883, at *7).  But he fails to acknowledge that recent cases in this district say otherwise, at least when a "procedural right" to timely adjudication of a visa "is tethered to [the] Plaintiff's concrete financial or other interests."  *Rahman*, 2022 WL 17262219, at *3 (citing cases).  In any event, the Court is skeptical of the pedigree of the "long line of cases" identified by the Secretary.  *Ravenswaay v. Napolitano* is the first decision in this Court to note the "long line of cases explaining that non-resident aliens lack standing to challenge the determinations associated with their visa applications."  613 F. Supp. 2d 1, 5 (D.D.C. 2009).  *Ravenswaay* cites *Kleindienst v. Mandel* to anchor this alleged "long line."  *Id.* (citing *Mandel*, 408 U.S. 753, 762 (1972)).  Although *Mandel* concluded that "an unadmitted

---

[4] *Hawaii* spoke only to the concrete harm suffered by U.S. citizens or lawful permanent residents separated from family members attempting to enter the country.  Although the Supreme Court has not addressed whether noncitizens attempting to enter the United States to be reunited with family have standing, *Hawaii* spoke generally to "a *person's* interest in being united with his relatives [being] sufficiently concrete," *Hawaii*, 138 S. Ct. at 2416 (emphasis added).  It would be puzzling to conclude that one half of "a bona fide relationship" has suffered a concrete injury from family separation but the other half has not suffered the same.  *Id.*

and nonresident alien[] ha[s] no constitutional right of entry," *Mandel* is not a case about Article III standing.  *Mandel* instead recognized an exception to the doctrine of consular nonreviewability when "the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Hawaii*, 138 S. Ct. at 2419.  Consular nonreviewability is a merits inquiry, not a jurisdictional one like standing.  *See Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1027 (D.C. Cir. 2021) (holding that "[d]ismissal based on consular nonreviewability . . . is a merits disposition," not a jurisdictional one).  And even assuming *Mandel*'s relevance here, a visa applicant's lack of a constitutional right to entry does not preclude Article III standing.  Indeed, "harms specified by the Constitution itself" are not the exclusive means for a plaintiff to establish a concrete harm for standing purposes; rather, a plaintiff may also plead "traditional tangible harms, such as physical harms and monetary harms" or "[v]arious intangible harms . . . with a close relationship to harms traditionally recognized." *TransUnion*, 141 S. Ct. at 2204.  That is precisely what the plaintiffs have done here.

Second, the plaintiffs' injuries are also redressable.  The Secretary contends that plaintiffs "do not plead that" an exception to Section 1735 applies to them, so "commands to State Department officials to re-adjudicate their nonimmigrant visa applications . . . cannot remedy their supposed injuries." Mot. to Dismiss at 14–15.  This argument was rejected in *Khazaei v. Blinken* and for good reason.  *See Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023).  As in *Khazaei*, the Secretary fails to assume the truth of the allegations contained in the complaint: specifically, the plaintiffs "have pled that their applications are still pending administrative processing." *Id.*; *see* Compl. ¶¶ 8–9, 11–12; *see also supra* note 3 (declining to take judicial notice of the online status of the plaintiffs' visa applications based on the Secretary's representations alone).  The State Department's "review of their applications is not complete," including any final determination as to the applicability of Section 1735's state-sponsor-of-

8

terrorism bar. *Id.* As such, the plaintiffs' injuries "may be redressed with an order to complete that review more expeditiously." *Id.* The Court thus rejects the Secretary's standing challenges.

## B. Doctrine of Consular Nonreviewability

The Secretary has also failed to persuade the Court that the doctrine of consular nonreviewability bars the plaintiffs' claims. "Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest.*, 985 F.3d at 1024 (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)). "Decisions regarding the admission and exclusion of noncitizens may implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances and, accordingly, such judgments are frequently of a character more appropriate to either the Legislature or the Executive." *Id.* (cleaned up). The Immigration and Nationality Act "grants consular officers exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations," and it is ultimately the consular officer that "has the authority to grant, deny, or revoke any visa." *Id.* Although the consular nonreviewability doctrine admits of two exceptions, neither applies here.

First, contrary to the Secretary's position, *see* Mot. to Dismiss at 29–33, the State Department has not rendered a final decision that triggers the doctrine of consular nonreviewability as traditionally understood. "[A] long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy v. DHS*, No. 21-cv-1521, 2022 WL 2966333, at *11 (D.D.C. July 27, 2022) (cleaned up). Here, the Complaint plainly alleges that Hassanpour, Mehrad Moradi, Sajjad

9

Moradi, and Shoaei "ha[ve] not received a final decision" on their visa applications. Compl. ¶¶ 8–9, 11–12.  At the motion-to-dismiss stage, the Court must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  And for the reasons stated in note 3, *supra*, the Court is unable to substitute these allegations with the Secretary's representations that the plaintiffs' applications have been "refused."

Further, even assuming the truth of the Secretary's representations, the Court is skeptical that the "Refused" status reflects a final decision has been reached on the plaintiffs' visa applications.  "At the motion to dismiss stage, the Court must examine Plaintiffs' allegations to determine whether the complaint sufficiently alleges that the consular officer's 'refusal' was in fact an interim decision [that] is not sufficiently final to warrant the application of the [consular nonreviewability] doctrine." *Al-Gharawy*, 2022 WL 2966333, at *16.  "While a visa application must be either granted or refused at an initial interview, that refusal is often not final. Instead, a refusal may be entered for 'administrative processing,' and applicants may have an opportunity to provide additional information to establish eligibility." *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 87 (D.D.C. 2022).  The Secretary seems to acknowledge as much here, noting in his motion papers that the four plaintiffs who voluntarily dismissed their claims all had their visa applications "refused" before a consular officer ultimately issued a visa.  *See* Mot. to Dismiss at 5–7.  This all but confirms that even if the State Department "refused" the four remaining plaintiffs' visa applications, any such refusal is not a final decision.  As such, under the view traditionally adopted in this district, the doctrine of consular nonreviewability does not apply.

Second, the Court rejects the Secretary's argument that the D.C. Circuit held in *Baan Rao* that the consular-nonreviewability doctrine bars administrative-processing claims like the plaintiffs'.  *See* Mot. to Dismiss at 29–30.  The Secretary relies on *Baan Rao*'s holding that

"[c]onsular nonreviewability shields a consular officer's decision to issue or *withhold* a visa from judicial review." 985 F.3d at 1024 (emphasis added). Seizing on the word "withhold," the Secretary argues that consular nonreviewability applies here because a consular officer's initial "refusal" of a visa application pending further administrative proceedings is effectively a decision to "continue to withhold the visa." Mot. to Dismiss at 30.

Other judges in this district have squarely rejected the argument that *Baan Rao* expands the doctrine of consular nonreviewability to administrative-processing claims. *See, e.g.*, *Al-Gharawy*, 617 F. Supp. 3d at 11–17; *Sawahreh v. Dep't of State*, 630 F. Supp. 3d 155, 159–60 (D.D.C. 2022); *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 17–18 (D.D.C. 2022); *Meyou v. Dep't of State*, No. 21-cv-2806, 2022 WL 1556344, at *2 (D.D.C. May 17, 2022). The Court finds these well-reasoned decisions persuasive and adopts their reasoning. In short, the Court does not believe *Baan Rao*'s use of the word "withhold" swept in consular decisions to delay final adjudication on a visa application. Indeed, the D.C. Circuit had no occasion to consider that possibility because it concerned "a challenge to final visa denials and not to processing delays." *Sawahreh*, 630 F. Supp. 3d at 160. Further, the word "withhold" takes both a "passive" meaning—*e.g.*, "one who refrains from granting an object for a time"—and an "active, final" meaning—*e.g.*, to "deny, decline, or disallow" a certain thing. *Al-Gharawy*, 617 F. Supp. 3d at 14 (cleaned up). Again, "[n]othing in . . . *Baan Rao* . . . suggests the D.C. Circuit intended to make a sweeping statement" adopting both a passive and active meaning of "withhold." *Id.* at 15. Lastly, *Baan Rao* borrowed the word "withhold" from *Saavedra Bruno*, a D.C. Circuit decision that "predates the long line of decisions from this Court that have held that the doctrine [of consular nonreviewability] does not apply before a consular official has rendered a final decision with respect to a visa application." *Id.* (citing *Saavedra Bruno*, 197 F.3d

11

at 1159). The Court thus rejects the Secretary's arguments and concludes that the doctrine of consular nonreviewability does not apply here.

### C. APA Claims

Although the Court rejects the Secretary's threshold arguments, it ultimately agrees with the Secretary that the plaintiffs APA claims fail under Rule 12(b)(6).

#### 1. *Unreasonable-Delay Claim*

The plaintiffs fail to state a claim for unreasonable delay. Under 5 U.S.C. § 706(1), a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." From this text emerges two requirements for an unreasonable-delay claim. First, a "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Second, the Court must evaluate "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (cleaned up).

The Court will assume without deciding that the Secretary is subject to a discrete, required duty because the plaintiffs have not suffered an unreasonable delay.[5] To evaluate whether an

---

[5] Applying the two-factor test for assessing the unreasonable-delay claim, the Court has no trouble finding that the Secretary's delay in deciding whether to "[g]rant[] or refus[e] a visa to a[] [specific] applicant" "is clearly a discrete agency action" rather than a "broad programmatic attack." *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023). Further, the D.C. Circuit has held that the APA "imposes a general but *nondiscretionary* duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099–1100 (D.C. Cir. 2003) (emphasis added); *see Khazaei*, 2023 WL 6065095, at *6. The year after *Mashpee* was decided, however, the Supreme Court held in *SUWA* that under 5 U.S.C. § 706(1) "agency action that can be compelled . . . is action legally *required*," and a court may order only a "precise, definite act about which an official had no discretion whatsoever." *SUWA*, 542 U.S. at 63. As the Supreme Court explained, a "court can compel the agency to act" "when an agency is compelled by law to act within a certain time period," such as a statute requiring an agency to act "[w]ithin 6 months" of a statute's enactment. *Id.* at 65.

agency's delay is unreasonable, the D.C. Circuit prescribed a six-factor test in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (internal quotation marks omitted) (quoting *TRAC*, 750 F.2d at 80). The *TRAC* factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80).

  i.  *TRAC* Factors 1 and 2

The first two factors are often considered together, *see, e.g.*, *Tate v. Pompeo*, 513 F. Supp. 3d 132, 148 (D.D.C. 2021), *appeal dismissed*, No. 21-5068, 2021 WL 3713559 (D.C. Cir. July 22, 2021), and the first *TRAC* factor is often considered "the most important" of the six. *In re Core Commc'ns, Inc.*, 531 F.3d at 855. In analyzing these factors, the Court must determine "whether

---

Here, by contrast, 5 U.S.C. § 555(b) does not speak specifically to the duties of consular officers, and it uses the open-ended phrase "within a reasonable time." These distinctions suggest that § 555(b) grants the agency "discretion over the pace of adjudication," rather than creates a nondiscretionary duty to act on a certain timeline. *Beshir v. Holder*, 10 F. Supp. 3d 165, 174 (D.D.C. 2014). But the Court will not decide whether *SUWA* "eviscerates" *Mashpee*, *Perry v. Merit Sys. Prot. Bd.*, 829 F.3d 760, 764 (D.C. Cir. 2016) (cleaned up), *vacated on other grounds sub nom. Perry v. Ross*, 697 F. App'x 18 (D.C. Cir. 2017), because the plaintiffs' claims fail under the *TRAC* framework.

the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

Factors one and two favor the Secretary in this case.[6] As the plaintiffs do not appear to contest, *see* Opp'n at 20–21, "[t]here is no congressional imposed timeline" for processing F-1 and F-2 visa applications, *Bagherian*, 442 F. Supp. 3d at 95, and "[a]bsent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine the reasonableness of a visa-application delay, *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Rahman*, 2023 WL 196428, at *4 (cleaned up). When the Complaint was filed here, the remaining plaintiffs waited between 6 and 12 months (now 14 and 20 months). This delay is reasonable under the circumstances and by comparison to similar student-visa cases. *See, e.g.*, *Shen v. Pompeo*, No. 20-1263, 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (holding that a 21-month delay in the adjudication of an F-1 student visa was not unreasonable); *Khazaei*, 2023 WL 6065095, at *7 (holding that a 12-month delay in the adjudication of F-1, J-1, and J-2 visas was not unreasonable); *Sawahreh*, 630 F. Supp. 3d at 162 (holding that a 15-month delay in adjudication of a J-1 visa was not unreasonable). Further, the reasonableness of this delay is further informed by the applicability of 8 U.S.C. § 1735(a), which requires the Secretary of State to make

---

[6] Contrary to the plaintiffs' assertion, *see* Opp'n at 10, it is not premature to adjudicate their unreasonable-delay claim at the motion-to-dismiss stage. Courts in this district have routinely decided whether an agency's delay is unreasonable when processing claims for immigration benefits at this stage. *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (collecting cases), *appeal dismissed*, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021).

a finding that the Iranian plaintiffs "do[] not pose a threat to . . . safety or national security" before issuing visas.

### ii.     *TRAC* Factor 4

Many courts find the fourth *TRAC* factor to "carr[y] the greatest weight." *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 15 (D.D.C. 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023) (citing *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)). In fact, "[t]his Circuit has refused to grant relief, even [when] all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Milligan*, 502 F. Supp. 3d at 319 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)) (alterations and quotations omitted). The fourth factor considers the effect of prioritizing one agency action over others. *See TRAC*, 750 F.2d at 80. Courts are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to "the head of the queue" and "simply move[] all others back one space." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991).

The fourth *TRAC* factor also weighs in favor of the Secretary. The plaintiffs contend that a ruling in their favor "would not deprive Defendant with the ability to manage its caseload." Compl. ¶ 82. "A decision would bring finality to the work already done." *Id.* The Court remains unpersuaded. Admittedly, the effect of prioritizing four visa applications would be "minimal," but "the accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate*, 513 F. Supp. 3d at 150. Indeed, the plaintiffs skipping ahead in line would amount to a "judicial reordering[] of agency priorities." *Rahman*, 2023 WL 196428, at *4 (cleaned up). Any such reordering of "the queue of

applicants seeking adjudication" would be "inappropriate" here because there would be no demonstrable "net gain" in visa processing at large. *Tate*, 513 F. Supp. 3d at 149.

### iii. *TRAC* Factors 3 and 5

*TRAC* factors three and five concern the "health and welfare . . . at stake" and "the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. These factors, often considered in tandem, *see, e.g.*, *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020), slightly favor the plaintiffs. At least one plaintiff has had to "defer[] his admission twice and is unable to defer admission again" due to the visa delay, and another plaintiff has been unable to care for "his spouse and newborn child." Compl. ¶¶ 9, 11. They also claim that they have suffered "stress[] and anxiety as the start date for programs draws near."[7] *Id.* ¶ 80. Taking these alleged adverse effects as true, as the Court must at this stage, *see Iqbal*, 556 U.S. at 679, the plaintiffs are in a worse position than visa applicants who merely claim that their lives have been put "on hold" by the visa delay. *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021).

### iv. *TRAC* Factor 6

The final *TRAC* factor requires the Court to "determine whether the agency has acted in bad faith in delaying action." *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023). This factor favors neither party. The plaintiffs allege "disparate treatment of Iranian national students" as evidence of such bad faith. Compl. ¶ 83. But as discussed in greater length in Section III.C.2, *infra*, the plaintiffs' allegations concerning disparate treatment are conclusory and unsupported. As such, the Court is unable to draw a plausible inference of bad faith from the Complaint. But "the lack of plausible allegations of impropriety

---

[7] Like the *Khazaei* Court, *see* 2023 WL 6065095, at *7, this Court does not credit the plaintiffs' speculative allegations that they "may be targeted simply for seeking a visa to enter the United States." Compl. ¶ 81.

16

does not weigh against [the plaintiffs], and therefore does not alter the Court's analysis." *Fakhimi*, 2023 WL 6976073, at *11; *see Khazaei*, 2023 WL 6065095, at *7 (concluding that the sixth *TRAC* factor "is neutral at best" because the plaintiffs' allegations of "disparate treatment of Iranian national students" were "merely conclusory").

\* \* \*

Taken together, the *TRAC* factors heavily favor the Secretary. The Court thus concludes that the plaintiffs have failed to state a claim for unreasonable delay under the APA.

2. *Arbitrary-and-Capricious Claim*

The plaintiffs' arbitrary-and-capricious claim also fails. The plaintiffs allege that the State Department has engaged in a "pattern or practice" of "disparate treatment on the applications of Iranian students who seek timely decisions on their nonimmigrant visa applications." Compl. ¶¶ 86, 88. Such a "pattern or practice" based on "nationality is arbitrary, capricious, and not in accordance with law." *Id.* ¶ 86.

The Court does not need to reach the reviewability issue under § 701(a)(2) because the plaintiffs have failed to state a claim. Like the plaintiffs in *Khazaei*, they "allege no facts in support of the existence of a broader 'pattern or practice' by U.S. consulates against Iranian student-visa applicants beyond their own individual experiences." 2023 WL 6065095, at *7. Nor do they allege facts about similarly situated visa applicants from other countries who have fared better than Iranian visa applicants. As such, the Complaint contains no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and the Court is not required to accept as true "legal conclusions" about a pattern or practice of discrimination. *Iqbal*, 556 U.S. at 678. The plaintiffs have thus failed to plead a plausible pattern-or-practice claim. Further, given both of the plaintiffs' APA claims fail, the Court will deny their request for

17

attorneys' fees and costs under the Equal Access to Justice Act.  *See* Compl. at 16; 28 U.S.C. § 2412 (only a "prevailing party" may receive fees and expenses).

## CONCLUSION

For the foregoing reasons, the Court will grant the Secretary's Motion to Dismiss, Dkt. 7. A separate order consistent with this decision accompanies this memorandum opinion.

February 7, 2024

                                      DABNEY L. FRIEDRICH
                                      United States District Judge